CROMPTON v. JENSON et al.

No. 4813.   Decided July 6, 1931.   (1 Pac. [2d] 242.)

*Geo. Buckle,* of Ogden, and *Francis Reeder,* of Reno, Nev., for appellant.

*Thatcher & Young,* of Ogden, for respondents.

ELIAS HANSEN, J.

The plaintiff is the owner and holder of a mortgage on certain real estate in Weber county, Utah. The defendants Joseph Williams, Jr., Daniel O. Williams, and Albert L. Williams, as executors of the last will and testament of Joseph Williams, deceased, are the owners and holders of a mortgage on the same real estate as that covered by plaintiff's mortgage. The plaintiff brought suit to foreclose his mortgage. In his complaint he alleges, among other matters, that the mortgage held by him is a first mortgage and as such is entitled to priority over the Williams mortgage. The Williamses answered. In their answer they allege that the debt secured by plaintiff's mortgage has been fully paid and that his mortgage has been released of record. They also plead that plaintiff's mortgage should not in equity and good conscience be given priority over their mortgage because of the long lapse of time since plaintiff's mortgage was executed and that plaintiff's mortgage is barred by the provisions of sections 2855 and 2875, Revised Statutes of Utah 1898, sections 2855 and 2875, Comp. Laws Utah 1907, and sections 6445 and 6466, Comp. Laws Utah 1917. They pray judgment that plaintiff's mortgage be declared inferior and subject to their mortgage. Upon issues joined the trial court found that plaintiff's mortgage was a valid subsisting lien upon the mortgaged premises, but that it was subject and inferior to the Williams mortgage. The mortgaged premises were ordered sold to satisfy the amount due and owing upon plaintiff's note and mortgage, but such sale was to be subject to the Williams mortgage. The plaintiff prosecutes this appeal. He complains because of that part of the judgment wherein the Williams mortgage was given priority over his mortgage.

The facts established by the evidence and found by the trial court, so far as material to the questions presented for review are these: On June 25, 1903, Mary H. Jenson made, executed, and delivered to Mrs. L. G. McKinney a negotiable promissory note for the sum of $1,700. The note was made payable on the 25th day of June, 1905. It bore interest from date at the rate of 10 per cent per annum, interest payable quarterly. The execution of the note shows that it was witnessed by David Jenson, one of the defendants in this action. David Jenson is the son of Mary H. Jenson, the maker of the note sued upon. It is made to appear that at the time Mrs. McKinney loaned the $1,700 to Mrs. Jenson which was evidenced by the promissory note, David Jenson was an intimate friend and trusted attorney of Mrs. McKinney. David Jenson was such friend and legal advisor of Mrs. McKinney before the note was executed and continued as such for many years thereafter. On May 3, 1904, Mrs. Jenson made, executed, and delivered to Mrs. McKinney the mortgage involved in this controversy as security for the payment of the note which Mrs. Jenson had theretofore executed and delivered to Mrs. McKinney. At the time the mortgage was executed Mrs. Jenson was the owner of the property covered by the mortgage. The mortgage was properly acknowledged so as to entitle it to be recorded and the same was recorded in the office of the county recorder of Weber county, Utah, on August 25, 1912. On April 10, 1911, Mary H. Jenson conveyed the real property involved in this suit to David Jenson. The deed of conveyance was acknowledged, and on March 25, 1918, was recorded in the office of the county recorder of Weber county, Utah. The conveyance from Mrs. Jenson to David Jenson was by warranty deed in the form provided by our statute. It made no mention of any mortgage. Under date of November 15, 1916, David Jenson and his wife, Emma A. Jenson, executed a deed conveying the real property here involved to David Jenson as trustee for the David Jenson Company. The deed so executed was acknowledged on March 15, 1918, and was recorded in the office

of the county recorder of Weber county, Utah, on March 15, 1918. The conveyance from David Jenson and his wife to David Jenson as trustee for the David Jenson Company was by warranty deed in form provided by our statute. It made no mention of any mortgage. On July 2, 1919, a purported release of the mortgage which plaintiff brought this suit to foreclose was recorded in the office of the county recorder of Weber county, Utah. The release so recorded was dated October 24, 1916. It purports to have been executed by the mortgagee, L. G. McKinney, before David Jenson as notary public. The release itself was not produced at the trial, but the record thereof was received in evidence. Under date of June 30, 1919, the David Jenson Company, a corporation, by David Jenson, its president, executed a mortgage in the sum of $2,500 as security for the payment of a note for a like amount. The mortgage and note were in favor of the Security State Bank. The mortgage so executed was acknowledged by David Jenson as president of the David Jenson Company and the same was recorded in the office of the county recorder of Weber county, Utah, on July 2, 1919. Under date of March 27, 1924, the Security State Bank executed a release of its $2,500 mortgage. The release was acknowledged and was recorded in the office of the county recorder of Weber county, Utah, on March 28, 1924. Under date of November 10, 1923, the David Jenson Company, by David Jenson, its president, executed a mortgage covering the property involved in this proceeding in favor of Joseph Williams, Jr., Daniel O. Williams, and Albert L. Williams, as executors of the last will and testament of Joseph Williams, deceased, for the sum of $10,000 as security for the payment of a note of the same date and for a like amount. The mortgage was acknowledged and recorded in the office of the county recorder of Weber county on the date it was executed. Under date of March 28, 1924, David Jenson as trustee for the David Jenson Company executed a mortgage covering the property here involved in favor of the Security State Bank for the sum of $7,500 as security for the payment of a note of the same date and for a like

amount. The mortgage was acknowledged and recorded in the office of the county recorder of Weber county on March 28, 1924. It is made to appear by parol evidence that the money which was owing on the $2,500 note and mortgage theretofore held by the Security State Bank was included in the $7,500 note and mortgage. On July 31, 1925, the Security State Bank assigned and transferred the $7,500 note and mortgage to the Commercial Security Bank. The assignment was acknowledged and was recorded in the office of the county recorder of Weber county, Utah, on November 17, 1926. On November 10, 1926, the Commercial Security Bank assigned and transferred the $7,500 note and mortgage to the defendants Williams. The assignment was acknowledged, and on November 17, 1926, was recorded in the office of the county recorder of Weber county, Utah. On October 23, 1926, the David Jenson Company, by David Jenson its president and by David Jenson its secretary, made, executed, and delivered to the defendants Williams a note and mortgage each being for the sum of $29,450. The mortgage covered the property involved in this proceeding together with other land. The mortgage was acknowledged, and on November 17, 1926, was recorded in the office of the county recorder of Weber county, Utah. It is this $29,450 mortgage which the defendants Williams claim should be given priority over the mortgage which the plaintiff brought this suit to foreclose. It is made to appear by parol evidence that the note and mortgage for $29,450 is a renewal of the two notes and mortgages, the one for $10,000 and the other for $7,500 theretofore held by the Williamses. There is also included in the $29,450 note and mortgage other obligations which the David Jenson Company owed to the Williamses. The note and mortgage upon which plaintiff's suit is founded was assigned to him by Mrs. McKinney a short time before this suit was begun.

Among the findings of fact made by the trial court are the following: That the purported release of the mortgage now held by the plaintiff was not signed by Mrs. McKinney nor by any other person authorized by her to sign the same;

that there was due and owing on plaintiff's note and mortgage at the time the decree of foreclosure was entered the sum of $3,280 principal and interest; that at sundry times since the execution of plaintiff's note and mortgage payments have been made thereon by David Jenson, the last payment being made on June 15, 1925, in the sum of $50; that no other person nor any corporation has made any payment thereon; that each and all of the payments made upon plaintiff's said note were made without the knowledge or consent or acquiescence of the Security State Bank or of the Commercial Security Bank or any of the defendants Williams. The foregoing findings are supported by evidence and are not attacked by any of the parties, except that the plaintiff assigns as error the finding "that no other person or corporation except David Jenson made any payments on plaintiff's note."

In their briefs counsel for the respective parties have argued at some length the legal effect of the record of the purported release of plaintiff's mortgage. That question is set at rest by the rule of law announced by this court in the case of *Norton* v. *Fuller et al.,* 68 Utah 524, 251 P. 29. The release of plaintiff's mortgage was not entitled to be recorded, and the fact that it was actually recorded had no legal effect.

Is plaintiff's mortgage barred by the statute of limitations as to Mary H. Jenson, the maker of plaintiff's mortgage, or as to David Jenson or as to the David Jenson Company, or as to the defendants Williams? We are of the opinion that the question must be answered in the negative. Plaintiff, by one of his assignments of error, claims that the evidence does not support the finding "that no other person nor any corporation has made any payments thereof." If the finding thus attacked is construed to mean merely that the payments on plaintiff's note and mortgage were in fact actually made by David Jenson, such finding is supported by all of the evidence touching that phase of the case. On the contrary, if that finding is construed to mean that David Jenson did not make the pay-

ments for or on behalf of any person or corporation other than David Jenson himself, the finding is not supported by, but is contrary to, the evidence. The evidence shows that as early as 1898 David Jenson acted as agent for his mother, Mary H. Jenson, in making payments of interest on money which Mrs. Jenson had borrowed from Mrs. McKinney, plaintiff's assignor. The evidence further shows that David Jenson acted as agent for his mother in securing the loan involved in this controversy, from Mrs. McKinney. After the loan was made and during the time that title to the mortgaged premises stood in the name of Mary H. Jenson, various payments were made on the indebtedness by David Jenson. There is no evidence in the record brought here for review which shows or tends to show that such payments were not made by David Jenson for and on behalf of his mother. There is no pleading and, so far as appears, no claim is made that David Jenson did not act for and on behalf of his mother when he made the various payments to Mrs. McKinney on the note and mortgage now held by the appellant. After the mortgaged premises were conveyed to David Jenson by his mother, the former continued to make payments the same as before the conveyance was executed. No claim is made that Mrs. McKinney was notified that David Jenson ceased to act as the agent of his mother in making payments on the indebtedness after the title vested in David Jenson. The obligation of Mrs. Jenson to pay the indebtedness owing to Mrs. McKinney continued after she conveyed the property. Mrs. McKinney had the right to assume that David Jenson was acting as the agent of his mother to make the payments until notice was given to the contrary. David Jenson may not avail himself of the bar of the statute of limitations because it was he who actually made the payments which at all times kept the mortgage alive. When these various payments were made, David Jenson was a trusted friend and legal advisor of Mrs. McKinney. When David Jenson received the conveyance of the property from his mother, he knew that it was subject to Mrs. McKinney's mortgage and likewise when the mort-

gaged property was conveyed to the David Jenson Company such company, because of the knowledge of its president, must be held to have had notice that Mrs. McKinney's mortgage was an outstanding lien against the property. By making payments from time to time upon the indebtedness, David Jenson and the David Jenson Company recognized the property was subject to the mortgage and that it could be used so far as was necessary to discharge and pay the indebtedness. *McLane* v. *Allison,* 60 Kan. 441, 56 P. 747. After David Jenson and his wife conveyed the mortgaged premises to David Jenson as trustee of the David Jenson Company, David Jenson continued to make payments on the note and mortgage. When these payments were made David Jenson held not only the title to the mortgaged property in trust for the David Jenson Company, but he was a stockholder and the president and the secretary of the David Jenson Company. No claim is made that David Jenson as such president and trustee was without authority to protect the title to the mortgaged premises by paying off the mortgage lien. The only conclusion permissible under the evidence in this case is that David Jenson made the various payments on the note and mortgage for and on behalf of his mother, himself, and the company which bears his name; or, if the payments were not in fact so made, Mrs. Jenson, David Jenson, and the David Jenson Company are now estopped from making any claim to the contrary. By making payments on the McKinney note and mortgage from time to time, David Jenson acknowledged that the mortgage was a subsisting lien against the property mortgaged, and neither he nor his company may now be heard to say that plaintiff's mortgage is barred by the statute of limitations. To hold otherwise would enable the David Jenson Company to profit by the deception of its principal officer and stockholder.

A somewhat different situation is presented when we come to a consideration of the Williams mortgage. It is urged by respondents that the Williams mortgage is entitled to priority over plaintiff's mortgage because a part

of the indebtedness secured by the Williams mortgage was a lien upon the mortgaged premises for more than six years immediately preceding the time that plaintiff brought suit to foreclose his mortgage. Plaintiff's suit to foreclose his mortgage was commenced on January 10, 1927. The Williams mortgage includes the note and mortgage for $2,500 dated June 30, 1919, recorded July 7, 1919, which the David Jenson Company made, executed, and delivered to the Security State Bank. Thus more than seven and one-half years elapsed between the time the mortgage given to secure the payment of the $2,500 note was recorded and the time plaintiff brought his suit to foreclose his mortgage. Respondents contend that under such a state of facts the Williams mortgage is entitled to priority over plaintiff's mortgage and that as to the Williams mortgage the plaintiff's mortgage is barred by the statute of limitations. According to the law announced by one line of authorities, if a mortgage is kept alive by the debtor or mortgagor, it is also kept alive as to the grantees and junior mortgagees of the mortgagor. According to another line of authorities, a mortgagor has no power to prolong the time of payment of his mortgage as against others who have an interest in the premises. It is quite generally held that when a note and mortgage are once barred as against the mortgagor such mortgagor may not revive the mortgage as against others who have an interest in the mortgaged premises. 2 Jones on Mortgages (8th Ed.) 1038, § 1540; 37 C. J. 1134, § 610; and cases cited in footnotes to the texts.

Obviously, under the first rule of law above stated, the plaintiff's mortgage is not barred by the statute of limitations and is entitled to priority over the Williams mortgage. Under the second rule above stated the $2,500 mortgage would have been entitled to priority over the plaintiff's mortgage were it not for the fact that the $2,500 mortgage was released. No case has come to our attention, however, which holds that the statute of limitations continues to run as to a released mortgage merely because the obligation which was secured by the released mortgage is included

within a new mortgage for the old obligation and an additional loan. The respondent seems to rely upon the law announced by this court in the case of *Boucofski* v. *Jacobsen,* 36 Utah 165, 104 P. 117, 122, 26 L. R. A. (N. S.) 898. The facts that this court had before it in that case so far as material here are as follows: On September 5, 1894, Esther Cohen Jacobsen executed and delivered a note and mortgage for $612 payable in one year to the order of Lewis P. Kelsey and Jane K. Gillespie. The mortgage was upon certain premises owned by Esther Cohen Jacobsen and situated in Salt Lake City, Utah. Shortly after the note and mortgage matured, Esther Cohen Jacobsen departed from the state of Utah and remained out of the state for a period of five years. On February 25, 1897, the Salt Lake Investment Company, one of the defendants in the suit, obtained a tax deed for the mortgaged premises for delinquent taxes for the year 1894, and on July 5, 1905, the Salt Lake Investment Company obtained a decree quieting its title as against Esther Cohen Jacobsen to the mortgaged premises. On July 14, 1905, Boucofski and others who had purchased the note and mortgage executed by Esther Cohen Jacobsen brought a suit to foreclose the mortgage. The Salt Lake Investment Company pleaded the statute of limitations as a bar to the foreclosure suit. This court held that plaintiffs were entitled to a personal judgment against Esther Cohen Jacobsen for the amount owing on the note executed by her, but that as to the Salt Lake Investment Company the plaintiffs were barred by the statute of limitations from enforcing their lien against the property covered by the mortgage. In the course of the opinion this court announced the following rules of law:

"After a careful reading of the decisions upon the question, and upon a full consideration of the fundamental principles involved, we have arrived at the following conclusions: That the bar of the statute may be invoked by the subsequent grantee or junior lien claimant in all cases when the bar could be invoked by the debtor, unless the subsequent grantee has, by agreement or otherwise, estopped himself; that such grantee or claimant may also invoke the bar in case the senior claimant has had either actual or constructive notice

of the subsequent grant or lien, although the right of action may still be alive as against the debtor, provided the full period of time required by the statute has elapsed since the interest of the subsequent grantee or lienholder was acquired, and the senior claimant has had either actual or constructive notice of such interest for that period of time; that in case such interest be acquired before the original debt matured, the statute in favor of the junior claimant begins to run from the time the right of action against the original debtor accrued; that the first mortgagee may extend the time of payment by agreement with the debtor, or may receive any payment or new promise which will either extend the time of payment or revive the debt, and if any such agreement or new promise is made, extension given, or payment received, before the interest of the subsequent grantee or junior lien attaches, or before the senior claimant has either actual or constructive notice, the agreement, new promise, or extension will be binding upon the subsequent grantee or junior lien claimant, but if these things occur after the interest has been acquired and the senior claimant has had notice as aforesaid, such agreement, new promise, or extension will not toll the statute as against the subsequent grantee or lien claimant without his consent."

The rules of law announced in that case do not aid but make against the respondents Williams. The $2,500 note and mortgage executed by the David Jenson Company in favor of the Security State Bank was executed on June 30, 1919, recorded July 7, 1919, and released on March 27, 1924. The life of that mortgage was less than five years. Parol evidence was offered from which it is made to appear that the $2,500 note secured by the mortgage for a like amount was not paid and that the amount still owing on the $2,500 mortgage was included in the note and mortgage for $7,500, and later in the Williams note and mortgage for $29,450. There is, however, nothing in the record before us which shows that Mrs. McKinney, the then owner and holder of plaintiff's mortgage, had either actual or constructive notice that the $2,500 note and mortgage formed any part of the $7,500 note and mortgage or the note and mortgage held by the Williamses. If Mrs. McKinney had received actual or constructive notice that the $2,500 note and mortgage were merely renewed by being included in the $7,500 note and

mortgage, there would be more merit in respondent's contention that the Williams mortgage is entitled, according to the law announced in the case of *Boucofski* v. *Jacobsen,* supra, to priority over plaintiff's mortgage, at least in so far as there may remain unpaid all or any part of the $2,500 note and mortgage. Under the rule of law announced in the case of *Boucofski* v. *Jacobsen,* supra, the rights of the holder of the plaintiff's mortgage remain intact so long as such holder was without actual or constructive notice for the full period of the statute of limitations, that the property was subject to another mortgage. At the time plaintiff commenced his suit to foreclose his mortgage, none of the mortgages represented by the Williams mortgage of $29,450 had been of record or in existence for the statutory period of six years. No claim is made that the plaintiff or his predecessor in title, Mrs. McKinney, had any actual notice that any of the indebtedness represented by the Williams mortgage for $29,450 had existed for the period of six years.

Respondents in their brief contend that the subsequent mortgages were but renewals of the $2,500 mortgage dated June 30, 1919; that the $2,500 mortgage was released by mistake; and that therefore such release does not constitute a break in the running of the statute of limitations in favor of the Williams mortgage and against plaintiff's mortgage. A number of authorities are cited which hold that a release of a mortgage by mistake, or with intent that the debt and security continue, is a renewal and not an extinguishment of the mortgage, and that such a release does not give priority to an intervening lien which is on record at the time the release is given. The rule of law announced by the authorities cited has no application here. At the time the $2,500 mortgage was released it was inferior to plaintiff's mortgage. The full statutory period of six years had not run. When the $2,500 mortgage was released the holder of such mortgage did not and could not give up any right or claim of priority over plaintiff's mortgage because the holder of the $2,500 mortgage had no such right. After

the $2,500 mortgage was renewed and merged into the $7,500 mortgage, the relative rights of the then holders of the Williams mortgage and the then holder of plaintiff's mortgage remained the same. It may be a debatable question whether the recording of a junior mortgage upon a tract of land may be said to constitute constructive notice to the holder of a senior mortgage on the same tract of land, but it certainly cannot be seriously contended that when the $2,500 mortgage was released and the mortgage for $7,500 was recorded Mrs. McKinney had constructive notice that the money owing on the $2,500 mortgage remained unpaid or that the $2,500 mortgage was included in the $7,500 mortgage and later in the Williams mortgage for $29,450. Under the rule of law announced in the Boucofski Case, supra, the Williams mortgage cannot avail itself of the plea of the statute of limitations unless the holder of the McKinney mortgage had either actual or constructive notice of the existence of the lien of the Williams mortgage for the full statutory period of six years. It follows that under the facts disclosed by the record in this case plaintiff's mortgage was not barred by the statute of limitations as to the Williams mortgage.

It is further urged on behalf of the defendants Williams that even though the bar of the statute of limitations is not available to them, nevertheless plaintiff should be precluded from claiming priority for his mortgage by the application of the doctrine of laches. A general statement of the law of laches frequently referred to by the courts is that of Judge Sanborn in the case of *Kelley* v. *Boettcher* (C. C. A.) 85 F. 55, 62. It is there said:

"In the application of the doctrine of laches, the settled rule is that courts of equity are not bound by, but that they usually act or refuse to act in analogy to, the statute of limitations relating to actions at law of like character. *Rugan* v. *Sabin*, 10 U. S. App. 519, 534, 3 C. C. A. 578, 582, and 53 F. 415, 420; *Billings* v. *Smelting Co.*, 10 U. S. App. 1, 62, 2 C. C. A. 252, 262, 263, and 51 F. 338, 349; *Bogan* v. *Mortgage Co.*, 27 U. S. App. 346, 357, 11 C. C. A. 128, 135, and 63 F. 192, 199; *Kinne* v. *Webb*, 12 U. S. App. 137, 148, 4 C. C. A. 170, 177, and 54 F. 34, 40; *Scheftel* v. *Hays*, 19

U. S. App. 220, 226, 7 C. C. A. 308, 312, and 58 F. 457, 460; *Wagner* v. *Baird*, 7 How. 234, 258 [12 L. Ed. 681]; *Godden* v. *Kimmell*, 99 U. S. 201, 210 [25 L. Ed. 431]; *Wood* v. *Carpenter*, 101 U. S. 135, 139 [25 L. Ed. 807]. The meaning of this rule is that, under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after the time fixed by the analogous statute of limitations at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by the statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it. The practical result is that a suit in equity for relief on the ground of fraud would not be barred by laches in the state of Colorado in less than three years after the discovery of the fraud unless unusual circumstances made it inequitable to allow its prosecution. Some of the circumstances which will induce a court of equity to apply the doctrine of laches in a shorter time than that fixed by the statute are the destruction of the muniments of title, the death or removal of parties, the number of innocent purchasers who may be affected, radical changes in the condition and value of the property, and its speculative character. *Lemoine* v. *Dunklin County*, 10 U. S. App. 227, 239, 2 C. C. A. 343, 348, and 51 F. 487, 492. When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches; and, when such a suit is brought after the statutory time has elapsed, the burden is on the complainant to show, by suitable averments in his bill, that it would be inequitable to apply it to his case. The cases of *Wagner* v. *Baird*, 7 How. 234 [12 L. Ed. 681]; *Godden* v. *Kimmell*, 99 U. S. 201 [25 L. Ed. 431]; *Wood* v. *Carpenter*, 101 U. S. 135, 139 [25 L. Ed. 807]; and *Rugan* v. *Sabin*, 10 U. S. App. 519, 534, 3 C. C. A. 578, 582, and 53 F. 415, 420,—belong to the class of cases in which the doctrine of laches was applied after the statute of limitations had run. The cases of *Billings* v. *Smelting Co.*, 10 U. S. App. 1, 62, 2 C. C. A. 252, 262, 263, and 51 F. 338, 349, and *Bogan* v. *Mortgage Co.*, 27 U. S. App. 347, 357, 11 C. C. A. 128, 135, and 63 F. 192, 199, belong to the class of cases in which the court refused to apply the doctrine of laches within the time fixed by the statute."

In the instant case we are unable to discern any "unusual conditions" or "extraordinary circumstances" which entitle the Williamses to invoke the doctrine of laches in

aid of their mortgage. One who deals with real property is charged with notice of what is shown by the records of the county recorder of the county in which the property is situated. The records of Weber county, Utah, showed that the Jenson property had been mortgaged to Mrs. McKinney. The record of the purported release showed that the acknowledgment was taken by David Jenson as notary public. It further showed that the legal title to the property purported to have been released from the mortgage stood in the name of David Jenson on the date the release bears. The fact that the acknowledgment was taken by a person with the same name as the owner of the legal title was sufficient to put persons dealing with the property upon inquiry to ascertain whether the release was genuine. The unfortunate position in which the Williamses find themselves is due in part at least to their own failure to heed what the public record disclosed, namely, that there was probably something wrong with the purported release of the McKinney mortgage. Nor can it be said that Mrs. McKinney was at fault because she failed to discover that the purported release of her mortgage had been placed of record. It would be a strange and an unusual rule of law that would require Mrs. McKinney from time to time to make inquiry at the office of the county recorder to ascertain if perchance some one had fraudulently released her mortgage. It is not claimed that she knew or had any reason to believe that her mortgage was released. David Jenson was from time to time making payments on her mortgage, and so far as appears Mrs. McKinney had no reason to believe that her mortgage was not properly recorded or that her rights thereunder were not properly safeguarded. David Jenson was the attorney for Mrs. McKinney, but he had no authority, so far as appears, to release her mortgage. The doctrine of laches is not available to the Williamses. From what has been said it follows that plaintiff's mortgage is entitled to priority over the Williams mortgage.

It is made to appear that the holders of the Williams mortgage have paid some taxes on the property involved in this proceeding. The payment of taxes was necessary for the preservation of the mortgaged property, and the money so paid, together with legal interest thereon from and after the date of payment, is entitled to priority over plaintiff's mortgage. The decree of foreclosure should be, and it is, ordered that it be so amended that the proceeds of the sale of the mortgaged property be applied as follows: First, to the payment of the taxable costs incurred by the plaintiff and the Williamses in the court below and in this court; second, to the repayment to the Williamses of the money which they have expended in payment of taxes on the mortgaged premises together with interest at 8 per cent per annum from and after the date of payment; third, to the payment of plaintiff's note and mortgage; fourth, to the payment of the Williams note and mortgage; and, fifth, the remainder, if any, to be paid to the David Jenson Company.

The cause is remanded to the district court of Weber county with directions that the findings of fact, conclusions of law, and decree be amended to conform to the views herein expressed.

CHERRY, C.J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.