2005 UT App 23

David J. ALLEN, an individual,
Plaintiff and Appellant,

v.

Thomas K. HALL, an individual; and
Homecomings Financial Network, Inc.,
a Delaware corporation, Defendants and
Appellees.

No. 20030633–CA.

Court of Appeals of Utah.

Jan. 21, 2005.

Rehearing Denied March 11, 2005.

James G. Swensen Jr., Salt Lake City, for Appellant.

Bruce J. Nelson, Nelson Christensen & Helsten, Salt Lake City, for Appellees.

Before BILLINGS, P.J., JACKSON, and THORNE, JJ.

## OPINION

THORNE, Judge:

¶ 1 David J. Allen appeals from the trial court's order quieting title in real property in favor of Thomas K. Hall and Homecomings Financial Network, Inc. We reverse in part and affirm in part.

## BACKGROUND

¶ 2 Allen and his former spouse, Sarah Satterfield Allen (Satterfield), were divorced in 1990. The divorce decree awarded Satterfield real property owned by Allen, contingent upon her maintaining the house payments and not moving more than fifty miles from Salt Lake City, Utah, until after the parties' youngest child turned eighteen.[1] Upon the failure of either of these two conditions the property and all of its related debt were to revert to Allen, and the property was to be sold. Any equity realized from the sale was to be divided equally between Allen and Satterfield. Allen and Satterfield's youngest child did not turn eighteen until August 6, 2003.

¶ 3 Allen transferred the property to Satterfield by quitclaim deed in 1993. The deed contained the following language of reservation:

This Quit–Claim Deed is subject to the rights and reservations included in that certain Decree of Divorce entered by the Third Judicial District Court, Salt Lake County, State of Utah in the case of *David John Allen v. Sarah Satterfield Allen,* Civil No. 894903635 (dated May 17, 1990). Said Decree of Divorce provides, in part, that if the grantee fails to maintain current house payments or if the grantee shall move more than 50 miles from Salt Lake City, Utah, before the grantor and grantee's last child reaches 18 year [sic] of age, title and ownership of the above described property shall revert to the grantor.

The deed from Allen to Satterfield was recorded in Salt Lake County in 1994.

¶ 4 Satterfield refinanced the property several times between 1990 and 1998. Allen was aware of some of these actions, and assisted Satterfield in refinancing the property on at least one occasion by providing her with an affidavit. Allen never objected to Satterfield's actions, despite their practical effect of reducing the property's equity value, to which Allen had a contingent interest.

¶ 5 In January 1998, Satterfield sold the property to Hall. Hall paid Satterfield $7000 in cash and agreed to assume the existing first and second mortgages totaling approximately $139,000. Satterfield transferred the property to Hall by quitclaim deed and continued to reside in the Salt Lake City area. In June 1999, Hall retired the existing mort-

---

1. Paragraph 10 of Allen and Satterfield's divorce decree stated:

   [Allen] is purchasing the house and lot located at 10159 Flanders Road, Sandy, Utah which shall be awarded to [Satterfield] as her sole and separate property subject to no claim by [Allen] except as set forth in this paragraph. [Satterfield] shall be responsible for all indebtedness and expenses therefrom, holding [Allen] harmless therefrom. [Allen] shall provide [Satterfield] with a quit-claim deed within 30 days of the divorce becoming final, with said quit-claim deed to contain the provisions that it is contingent upon [Satterfield] maintaining durrent [sic] house payments and not moving from the Salt Lake City area before the [par-

   ties'] last child reaches age 18.... If [Satterfield] shall move more than 50 miles from Salt Lake City Utah before the last child reaches age 18, ownership of the marital residence shall revert to [Allen], who will then sell the home and divide the proceeds equally with [Satterfield], and who will be responsible for all indebtedness thereon until the house is sold. These provisions are to ensure that the children have a suitable residence during their minority, and are structured to provide a benefit to [Satterfield] if she shall continue to reside in Salt Lake City, Utah in the form of all of the equity in said home, and a detriment if she shall move, in the form of the loss of one-half of the equity.

gages by refinancing the property with appellee Homecomings Financial Network, Inc., in the amount of $151,900. Homecomings then recorded a security interest in the property.

¶ 6 Satterfield moved to North Carolina in July 1999. Shortly thereafter, Allen contacted Hall and made a claim to the property under the terms of the deed and the incorporated divorce decree. Hall refused to recognize Allen's claim, and in 2000 Allen brought suit against Hall to quiet title under the deed. Hall counterclaimed for reimbursement for valuable improvements and other damages.

¶ 7 After a bench trial, the trial court quieted title to the property in Hall. The court entered extensive findings of fact and conclusions of law to support its order. Among its reasons for quieting title in Hall, the court listed laches, estoppel, and unjust enrichment; extinguishment of Allen's interest based upon lack of equity as established during Satterfield's 1998 bankruptcy proceeding; and ambiguity in the divorce decree resulting in substantial inequitable harm to Hall. The trial court also found that, if Allen were to be awarded title to the property, he would take the property subject to all existing debt thereon, and that Hall would be entitled to reimbursement for $42,279.36 in improvements, $10,000 in labor, and $6974.67 in real property taxes.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Allen raises multiple issues challenging the trial court's application of the law of real property and the Utah Occupying Claimants Act (Claimants Act), *see* Utah Code Ann. § 57–6–1 to –8 (2000). Allen's arguments present questions of law that we review for correctness. *See Nunley v. Westates Casing Servs., Inc.,* 1999 UT 100, ¶ 31, 989 P.2d 1077 (reviewing trial court's legal conclusions regarding application of estoppel doctrine for correctness); *Jeffs v. Stubbs,* 970 P.2d 1234, 1240 (Utah 1998) (reviewing interpretation of Claimants Act for correctness); *Nelson v. Provo City,* 2000 UT App 204, ¶ 9, 6 P.3d 567 (reviewing questions of property law for correctness); *Anderson v. Doms,* 1999 UT App 207, ¶ 8, 984 P.2d 392 ("[T]he determination of whether a party was prejudiced for purposes of the doctrine of laches is a legal conclusion that we review for correctness[.]"); *Eyring v. Fairbanks,* 918 P.2d 489, 491 (Utah Ct.App.1996) (reviewing divorce decree for ambiguity under correctness standard); *Progressive Acquisition, Inc. v. Lytle,* 806 P.2d 239, 242 (Utah Ct.App.1991) ("Review of the trial court's conclusion as to the legal effect of the bankruptcy court's orders presents a question of law.")

## ANALYSIS

¶ 9 The trial court's quiet title order rested on various theories, including laches, estoppel, and unjust enrichment. Allen argues that each theory relied upon by the trial court ignores the clear conditional language of Allen's recorded 1993 property deed to Satterfield, and the statutory presumption that Hall had full knowledge of that recorded instrument when he purchased the property from Satterfield in 1998. *See* Utah Code Ann. § 57–3–102(1) (2000) ("Each [deed] shall, from the time of recording with the appropriate county recorder, impart notice to all persons of [its] contents.").

¶ 10 We agree with Allen that the terms of the deed entitled him to a possibility of reverter that became a fee simple interest upon Satterfield's moving to North Carolina in July 1999. We also agree that, pursuant to section 57–3–102, Hall is deemed to have had notice of Allen's interest from the time of recording in 1994. *See id.; see also Salt Lake County v. Metro West Ready Mix, Inc.,* 2004 UT 23, ¶ 17, 89 P.3d 155 (" '[O]ne who deals with real property is charged with notice of what is shown by the records of the county recorder of the county in which the property is situated.' " (quoting *Crompton v. Jenson,* 78 Utah 55, 1 P.2d 242, 247 (1931))). However sympathetic to Hall the facts of this case might be if he did not have notice of Allen's interest, we must proceed under the statutory presumption that Hall was aware that he was purchasing property subject to potential divestiture if Satterfield relocated.

¶ 11 Hall's notice of Allen's interest destroys any equitable ground upon which the court could quiet title in Hall, as Hall cannot

be said to have had any good faith belief that he was purchasing the property in fee simple. The trial court's reliance on Satterfield's bankruptcy proceedings is also misplaced given the language of the deed and divorce decree, which we find to be clear and unambiguous. Even if, as found by the trial court, there was no equity in the property at the time that it was released from the bankruptcy proceeding, Allen was still entitled to title ownership of the property once the conditions in the deed to Satterfield were satisfied. In sum, as Allen asserts on appeal, Hall knowingly purchased only that property interest that Satterfield had to sell. That property interest reverted to Allen in 1999 when Satterfield left the state, and title must be quieted in Allen rather than Hall.[2]

■ ¶ 12 Having determined that Allen is entitled to the property, we must address the question of whether Allen must also assume the current debt on the property. The trial court concluded, pursuant to the divorce decree, that Allen would be responsible for all indebtedness on the property if he were to retake it. We agree. The decree, which was incorporated into the 1993 deed, states that upon reversion Allen "will be responsible for all indebtedness thereon until the house is sold." This clear language indicates that Allen takes the property subject to any debt existing at the time of the reversion, and we affirm the trial court on this issue.

■ ¶ 13 Further, we can identify no error in the trial court's application of the Claimants Act. *See* Utah Code Ann. § 57–6–1 to –8 (2000). The Claimants Act states, in part:

Where an occupant of real estate has color of title to the real estate, and in good faith has made valuable improvements on the real estate, and is afterwards in a proper action found not to be the owner, no execution shall issue to put the owner in possession of the real estate after the filing of a complaint as hereinafter provided, until the provisions of this chapter have been complied with.

*Id.* § 57–6–1. Thus, one seeking reimbursement under the Claimants Act must show that he or she had color of title to real

property, made valuable improvements to that property, and did so in good faith. Allen concedes on appeal that Hall had color of title to the property when he made improvements to it.

■ ¶ 14 Allen did not preserve any objection to the trial court's use of Hall's evidence regarding the value of goods and labor expended in improving the property, nor did Allen present any contradictory evidence suggesting that the improvements were for a lesser amount. Even if this issue had been preserved, there is record evidence supporting the trial court's determination that Hall is entitled to reimbursement for improvements and labor in the amount of $52,279.36.

¶ 15 The trial court found that, at the time Hall purchased the property, it had a "fair market value [of] approximately $146,000." This finding is supported by Satterfield and Hall's agreed upon price of $146,000 for the property in January 1998, and by Satterfield's March 1998 bankruptcy filing and subsequent ruling by the bankruptcy court. By April 1999, after Hall's improvements, the property was appraised at $200,000. Hall testified as to the appraisal value at trial, and submitted the appraisal report as an exhibit. The $54,000 difference between fair market value at purchase and the April 1999 appraisal value of $200,000 approximates and readily supports the trial court's determination of the proper reimbursement amount.

■ ¶ 16 Finally, contrary to Allen's assertions on appeal, Hall acted in good faith in improving the property. Even assuming, as we must, that Hall knew of the possibility of reversion of the property to Allen, Hall had a good faith belief in his ownership of the property until he received notice that Satterfield had actually fulfilled the condition in the deed, sometime after June 1999. *Cf. Jeffs v. Stubbs,* 970 P.2d 1234, 1242 (Utah 1998) (concluding that a good faith belief in a life interest in land satisfies the good faith requirement of the Claimants Act). From the record, it is apparent that the improvements claimed by Hall all occurred in 1998, prior to Satterfield's departure from Utah.

---

**2.** Subject to the requirements of the Claimants   Act. *See* Utah Code Ann. § 57–6–1 to –8 (2000).

¶ 17 The trial court properly applied the Claimants Act to determine the amount of Hall's reimbursement. On remand, the trial court is to apply the remaining provisions of the Claimants Act to ensure that Hall is reimbursed for his claim prior to Allen taking title to the property.[3]

## CONCLUSION

¶ 18 Allen is entitled to the property pursuant to the terms of the divorce decree and his deed to Satterfield. Allen will take the property subject to all debts thereon, and only upon reimbursement to Hall pursuant to the Claimants Act. We reverse the trial court's quiet title order, affirm the trial court's determinations regarding Allen's responsibility for debt on the property and Hall's Claimants Act claim, and remand the matter for further proceedings consistent with this opinion.

¶ 19 WE CONCUR: JUDITH M. BILLINGS, Presiding Judge and NORMAN H. JACKSON, Judge.

3.  The Claimants Act sets out the procedures to be followed after a successful claim for reimbursement for improvements:

    The plaintiff in the main action may thereupon pay the appraised value of the improvements and take the property, but should he fail to do so after a reasonable time, to be fixed by the court, the defendant may take the property upon paying its value, exclusive of the improvements. If this is not done within a reasonable time, to be fixed by the court, the parties will be held to be tenants in common of all the real estate, including the improvements, each holding an interest proportionate to the values ascertained on the trial.

    Utah Code Ann. § 57–6–3.