# WHITE v. SALT LAKE CITY.

No. 7652.   Decided January 4, 1952.   (239 P. 2d 210.)

See 39 C. J. S., Highways, sec. 139. Street abandonment, reversion of title after. 25 Am. Jur., Highways, sec. 128; 70 A. L. R. 564.

*William D. Callister, A. C. Melville,* Salt Lake City, for appellant.

*E. R. Christensen, Homer Holmgren,* and *A. Pratt Kesler,* City Attorneys, all of Salt Lake City, for respondent.

WOLFE, Chief Justice.

This is an action for damages against Salt Lake City, for the alleged wrongful laying of water pipes in the street abutting plaintiff's property. Plaintiff is the fee owner of property abutting both sides of two dedicated streets which meet at right angles. His 80 acres adjoins both sides of Marie Avenue for a distance of 1300 feet and both sides of Valley Street for 1700 feet. The property is situated in Salt Lake County outside the corporate limits of the defendant municipality. The defendant laid a 48-inch steel water pipe line, three feet under the surface of the streets for the purpose of carrying water to Salt Lake City users. The trial court granted defendant's motion to dismiss the amended complaint and plaintiff appeals.

Plaintiff's theory is that an actionable trespass has been committed. He seeks to have the pipe line removed or

damages in the alternative. His argument is summarized in his brief as follows:

"Point I—Ownership of property abutting both sides of a street includes ownership of the street itself, subject only to the use of the same by the public for highway purposes.

"Point II—The unauthorized laying of a water pipe line by a municipality in a street outside of its corporate limits which line in no way benefits or serves the abutting property, is an additional burden upon the property constituting an invasion of the abutting owner's rights and is actionable."

Unless otherwise noted, all statutory citations may be found in Utah Code Annotated, 1943. All italics have been added by the author.

Plaintiff relies on:

36-1-1—"In all counties all * * * streets * * * laid out or erected as such by the public * * * are public highways."

36-1-7—"By taking or accepting land for a highway the public acquires only the right of way and incidents necessary to enjoying and maintaining it. *A transfer of land bounded by a highway passes the title of the person whose estate is transferred to the middle of the highway.*"

The defendant cites 78-5-4, contending that the County of Salt Lake owned the streets in question, and it was upon this statute that the District Court granted the order of dismissal.

78-5-4—"Such maps and plats, when made, acknowledged, filed and recorded, shall operate as a dedication of all such streets, alleys and other public places, and shall *vest the fee* of such parcels of land as are therein expressed, named or intended for public uses *in such county,* city or town *for the public for the uses therein named or intended.*"

But the plaintiff contends that this court construed the forerunner of the above quoted statute in *Sowadzki* v. *Salt*

*Lake County*, 36 Utah 127, 104 P. 111, 116, and he quotes from the opinion as follows:

"While the word 'fee' is used in the section, [Laws 1890, P. 76 c. 50, identical meaning as 78-5-4, supra] it is clear from what follows that it was not intended that the fee of the corpus or land itself should pass, *but only the fee to the surface*, and this only for public use for all purposes of a street or highway. The fee mentioned in the statute was thus what is known as a limited or determinable fee, and was created for a special purpose or purposes only, and hence was subject of abandonment."

In the *Sowadzki* case, supra, a plat had been filed and recorded, dedicating a certain Wabash Avenue in Dankowski Park to the Salt Lake County Commissioners for public use. The park was in fact a cultivated field and appellant Sowadzki's house stood in the middle of the platted street, Section 1116, Compiled Laws of 1907, provided,

" 'that a road not used or worked for a period of five years ceases to be a highway.' "

Because Sowadzki had resided in the platted street for more than five years, the highway was held to have been abandoned. It actually never came into existence. To rationalize the meaning of the 1890 Act which stated that the fee vested in the county, the court stated that it was a determinable fee subject to abandonment. The language of the court, quoted by plaintiff that *"only the fee to the surface" passed* was wholly gratuitous and was made without intending to determine the sub-surface uses which the county commissioners may deem to be intended for the public.

Plaintiff maintains that the fee to the street is in the abutting owner with an easement in the public for use as a highway, plus the laying of gas, water and sewer pipes etc., necessary to serve the abutting property. His contention that conduits of public utilities or foreign municipalities which do not serve the abutting property constitute an additional servitude is borne out by the following author-

ities: *Sterling's Appeal,* 1886, 111 Pa. 35, 2 A. 105; *Kincaid* v. *Indianapolis Natural Gas Co.,* 1890, 124 Ind. 577, 24 N. E. 1066, 8 L. R. A. 602; *Ward* v. *Triple State Natural Gas & Oil Co.,* 1903, 24 Ky. Law Rep. 116, 74 S. W. 709; *Van Brunt* v. *Town of Flatbush,* 1891, 128 N. Y. 50, 27 N. E. 973; and *Hofius* v. *Carnegi-Illinois Steel Corp.,* 1946, 146 Ohio St. 574, 67 N. E. 2d 429. The rule announced in these cases is that abutting property owners have a right in the roadway paramount to all uses except public travel, and additional servitudes cannot be imposed without payment of compensation, *Kincaid* v. *Indianapolis Natural Gas Co.,* supra.

The problem here involved is to determine, if possible, a consistent interpretation of the various statutory provisions found in our code which concern the uses to which public highways and streets may be put. Applicable provisions are found under the subject of Highways, 36-1 and 36-3; Plats and Sudvisions, 78-5-4 and Powers of County Commissioners, 19-5-39. First, it is important to note that under 78-5-4, supra, the fee in the streets of a platted subdivision vests in the political unit where the property is located. Thus the public rights in streets dedicated by filing a plat seem to be identical whether the street is in a city or in a county outside any incorporated municipality. The provisions involved in the *Sowadzki* case

" 'that a road not used or worked for a period of five years ceases to be a highway' "

was repealed by the Laws of 1911, page 287. But Sections 78-5-6, 7 & 8 still provide means whereby contiguous property owners may petition the governing body of the city or the board of commissioners of the county to alter or vacate any street. If the governing authorities are satisfied that neither the public interest nor any person will be materially injured, the petition to vacate shall be granted. In such event the "limited or determinable fee" spoken of

in the *Sowadzki* case would then revert to the abutting property owner. But as long as the dedicated street remains platted as a public thoroughfare, the statutory provision that the fee is vested in the county commissioners can only be interpreted to mean that the rights of the county, acting through its commissioners, are superior to those of the abutting property owner insofar as the normal use of the street is concerned. We have clearly changed by statute the old common-law rule insofar as streets in platted subdivisions are concerned.

This plain interpretation of 78-5-4 is further amplified by 36-3-3 which states:

"Water mains, sewers and sewer pipes may be laid by permission or upon the order of the board of *county commissioners,* and shall be located in the roadway section of the highway off the paved portion thereof, at a sufficient depth to keep the roadway secure, and to prevent a nuisance thereon; * * *"

Section 19-5-39 states:

"They [the county commissioners] may grant franchises along and over the public roads and highways for all lawful purposes, upon such terms, conditions and restrictions as in the judgment of the board may be necessary and proper * * *."

The provisions enumerating the powers of the county commissioners clearly indicate that the Legislature did not regard the dedication to the public of a street in a platted subdivision as the surrender of an easement with retention of the fee to the corpus in the abutting owner. The segregated statutory provisions are reconcilable when construed to mean that the county or city authorities are vested with the fee in the streets. Such ownership carries with it the right to use it for the enumerated purposes when, in their discretion, it bests serves the public interest. If the street should cease to serve any public interest, it may be abandoned and, in that case, the right to the use and control of the roadway would revert to

the abutting owner pursuant to 36-1-7 and common law principles.

It is conceded by the plaintiff that the city gained permission from the county commissioners to lay its water main in the roadbed of the streets concerned. We do not intend to state in this opinion what possible ■ rights in view of other fact situations the abutting owner may have, but it is clear that the city water main here complained of is a public use, the franchise for which was within the county commissioners' authority to grant.

This result is supported by the following authorities and excerpts taken therefrom. In *Edison Illuminating Co.* v. *Misch,* 200 Mich. 114, 166 N. W. 944, at page 947 the court stated:

> "The present statute relating to town plats (chapter 74, Compiled Laws 1915, § 3351) vests the fee of streets and alleys in the city or village within the corporate limits of which the land platted is included, or, if not included within the limits of any incorporated village or city, then in the township within the limits of which it is included, in trust to and for the uses and purposes therein designated. The former statute vested the fee of streets and alleys in the county. It has been held by this court that whatever the nature of the title of the municipality in streets and alleys (whether a fee simple or only a conditional fee, or a perpetual easement), it is such as to enable the public authorities to devote them to public purposes."

Other cases in point are: *McWethy* v. *Auroar Electric Light & Power Co.,* 202 Ill. 218, 67 N. E. 9; *State ex rel. St. Louis Underground Service Co.* v. *Murphy,* 134 Mo. 548, 31 S. W. 784, 34 S. W. 51, 35 S. W. 1132, 34 L. R. A. 369; *Huddleston* v. *City of Eugene,* 34 Ore. 343, 55 P. 868, 43 L. R. A. 444; *McCann* v. *Johnson County Telephone Co.,* 69 Kan. 210, 76 P. 870, 66 L. R. A. 171; *Empire Natural Gas Co.* v. *Stone,* 121 Kan. 119, 245 P. 1059; *Cater* v. *Northwestern Tel. Exch. Co.,* 60 Minn. 539, 63 N. W. 111, 28 L. R. A. 310; and *Smith* v. *Central Power Co.,* 103 Ohio St. 681, 137 N. E. 159. It is interesting to note that both parties rely on Ohio cases: plaintiff cites *Hofius* v. *Carnegie-*

*Illinois Steel Corp.*, 146 Ohio St. 574, 67 N. E. 2d 429, and defendant relies upon the *Smith* case, supra [103 Ohio St. 681, 137 N. E. 161]. The *Smith* case involved a dedicated avenue in the city of Bucyrus and a statute substantially similar to ours which stated:

" 'The map or plat so recorded shall thereupon be a sufficient conveyance to vest *in the municipal corporation* the fee * * * of land * * * intended for streets * * *'" Gen. Code Ohio § 3585.

The court dismissed an action brought by an abutting property owner to enjoin the placing of high voltage electric lines along the said avenue. The concurring opinion of Mr. Chief Justice Marshall of the Ohio Supreme Court forcefully states:

"It must be admitted that the decisions heretofore have not been uniform. The earlier decisions did not have to deal with the complex and modern uses to which streets and highways are now subjected, *and with the expanding civilization there must necessarily be some expansion of the rules which have been heretofore laid down.* In some of the decisions it is stated that streets and highways are for the purpose of public travel. This restricted view is natural, because in primitive times nothing beyond individual travel was even contemplated. As civilization progressed, transportation, communication of messages, and many municipal uses, including the product and service of the many public utilities which are now recognized by Ohio statutes, began to utilize our highways * * *

"* * * Some of the highways of our state were originally Indian paths or paths established by wild animals. By a process of evolution they successively became footpaths of the settlers, bridle paths, ways for pack animals, ways for horse-drawn vehicles, ways for motor-propelled vehicles and electric street cars, ways for wires for telephone and telegraph service and for the transmission of electric energy, ways for pipes for water, sewage, gas, steam, hot water, and other utilities.
        *       *       *       *       *
"The evolution of public utilities and the widespread and ever-increasing use of public utility service throughout the state have greatly varied the uses of the streets and highways. It is doubtful whether this great variety of uses has really increased the burdens. The increased burdens upon the highways are caused primarily by the

largely increased population, and the demands of the people for necessities, conveniences, and luxuries of modern living conditions * * * It is hardly correct to say that by such new adaptations the streets and highways are subjected to uses not contemplated when highways were laid out many years ago. *It would be more correct to say that present uses are the progression and modern development of the same uses and purposes.* The new appliances are but rapid transit methods of supplying the modern wants of the people, the wires supplanting the messenger, the carrier and the postman, and the rails and pipe lines supplanting in part the vehicular traffic." (Emphasis added.)

The *Hofius* case [146 Ohio St. 574, 67 N. E. 2d 431] was decided 25 years later in the same jurisdiction. It involved the construction of a water main along a country road on which plaintiff's 80-acre farm abutted. The statute involved in the *Smith* case, supra, vested the fee of a platted street in the municipal corporation and did not apply to country highways. Therefore, the court stated,

"In this state *the fee to the country highway* is in the abutting owner, and the public has only the right of improvement thereof and uninterrupted travel thereover.' "

The two cases are consistent and show that the Ohio platting statute vests the municipality with such an ownership in the platted streets that the abutting owner is barred from bringing an action for the imposition of any so-called additional servitude.

In this jurisdiction, the Legislature had the foresight to extend the rule to any subdivision, whether it be in the county or in the city. Therefore, the plaintiff's action must fail. The judgment is affirmed. Costs awarded to respondent.

WADE, McDONOUGH, and CROCKETT, JJ., concur.

HENRIOD, J., concurs in the result.