**FALULA FARMS, INC., Plaintiff and Appellee,**

v.

**Bonnie B. LUDLOW, Defendant and Appellant.**

**No. 930050–CA.**

Court of Appeals of Utah.

Dec. 2, 1993.

Randy S. Ludlow, argued, Salt Lake City, for defendant and appellant.

George W. Preston, argued, Logan, for plaintiff and appellee.

Before GREENWOOD, ORME and RUSSON, JJ.

## OPINION

GREENWOOD, Judge:

Plaintiff Falula Farms, Inc. (Falula Farms) brought this quiet title action to resolve ownership in a strip of land that was previously a county highway on the shores of Bear Lake. The trial court quieted title in Falula Farms and defendant Bonnie Ludlow (Mrs. Ludlow) appeals. We reverse and remand for the entry of judgment quieting title to the vacated strip of land in Mrs. Ludlow.

## FACTS

In 1958, Alden and Della Siddoway began developing a portion of their lakefront property on Bear Lake. They designated approximately 160 acres for development and hired an engineer to survey, subdivide, and map-out the acreage. Thereafter, they submitted a plat of the subdivision, designated as Block 4, to the Rich County Commission for approval. As part of the development, the Siddoways dedicated various strips of land for public and private rights-of-way.[1]

After obtaining the County Commission's approval, the Siddoways began selling lakefront lots to the public. On August 11, 1958, the Siddoways sold Lots 80 and 81 of the Block Four Siddoway Subdivision to Hydroswift Corporation. In 1973, Hydroswift transferred ownership of the two lots to Mrs. Ludlow. Mrs. Ludlow, Hydroswift's successor in interest, was the secretary of Hydroswift, a corporation wholly owned by Mrs. Ludlow and her husband, Roy Ludlow. Although Hydroswift purchased the two lots in August 1958, it did not record the warranty deeds to those lots until August 27, 1963. When purchased in 1958, the east boundary of both lots abutted a sixty-six foot public right-of-way for a county road, as indicated on the plat map filed with the County.

Eleven years later, in 1969, Falula Farms, the Siddoways' successor in interest,[2] petitioned the Rich County Commission to move the existing sixty-six-foot-wide county road approximately twenty-two feet to the west. Falula's purpose in moving the road was to free up more lakefront property for development. To facilitate this move, Falula Farms executed, on October 30, 1969, a special warranty deed in favor of Rich County, deeding a sixty-six foot strip of land for the new county road. In exchange, and on the same day, Rich County executed a quitclaim deed to Falula Farms for the twenty-two foot vacated strip of the old county road.

The county road was subsequently moved twenty-two feet to the west. For the next eighteen years neither party to this suit raised the issue of ownership of the vacated strip of land. However, on August 6, 1987, Mrs. Ludlow filed a Notice of Claim assert-

---

1. The plat map filed with the County Commission includes an owner's Declaration and Dedication signed by Alden Siddoway and the following dedication of land for public rights-of-way:
 I hereby dedicate and set apart said BLOCK FOUR (4) Siddoway Sub–Division with the following stipulations and conditions here added:
 1. That I *relinquish all rights* to the new location of Public Right of Ways (Main Public Right of Way and Two Secondary Public

 Right of Ways) located and described herein, and hereby *grant and convey* them for *perpetual public use.*
 (Emphasis added.)

2. On January 26, 1962, Alden and Della Siddoway transferred, by quitclaim deed, their remaining lakefront property to Falula Farms, their wholly owned corporation.

ing ownership of the vacated twenty-two foot strip of land abutting lots 80 and 81. In opposition to Mrs. Ludlow's claim, Falula Farms asserted its ownership of the same strip of land, by virtue of the 1969 quitclaim deed executed by Rich County to Falula Farms. Falula Farms thereafter brought suit to quiet title.

The trial court concluded that Falula Farms owned the disputed strip of land, subject to Mrs. Ludlow's easement for ingress and egress, because Utah Code Ann. § 27–1–7 (1953),[3] relied upon by Mrs. Ludlow, was repealed before Hydroswift recorded its deeds in 1963. Furthermore, the trial court held that the recording of the Siddoway Subdivision Plat clearly evidenced the Siddoway's intention to grant ownership only to the specific tracts of land and not to any part of the road.

## ISSUES ON APPEAL

The parties raise four issues on appeal. However, because it is dispositive, we address only the issue of whether the Siddoway's initial dedication of the county road in 1958 granted an easement or fee title to Rich County, and if title, whether it was an absolute or a defeasible fee.

## STANDARD OF REVIEW

 A quiet title action necessarily involves an ultimate conclusion of law as to who owns the disputed piece of property. In reviewing the trial court's conclusions of law, we accord them no particular deference but review them for correctness. *Oates v. Chavez*, 749 P.2d 658, 659 (Utah 1988).

## ANALYSIS

 Common law principles regarding highways, roads, and public rights-of-way prescribe that the public obtains only an easement in a highway or road dedicated for public use. *See, e.g., Mason v. State*, 656 P.2d 465, 471 (Utah 1982) (Howe, J., concurring); *Town of Moorcroft v. Lang*, 761 P.2d 96, 98 (Wyo.1988). Furthermore, at common law the owner of land which abutted a highway owned up to the middle of the highway. *See* Utah Code Ann. § 27–1–7 (1953) (repealed 1963) (replaced by *id.* § 27–12–101 (Supp.1993) (effective 1963)); *Hummel v. Young*, 1 Utah 2d 237, 265 P.2d 410, 411 (1953). Thus, common law principles gave the public, represented by local government, no more than an easement in land dedicated as a public highway or road. Consequently, when a city or county abandoned or vacated a dedicated highway or road, the abutting landowners owned and possessed the underlying property to the middle of the highway or road. *Mason*, 656 P.2d at 471.

In Utah, as well as many other states, however, the common law principles have been modified or completely changed by statutory and case law. *White v. Salt Lake City*, 121 Utah 134, 239 P.2d 210, 213 (1952) ("We have clearly changed by statute the old common-law rule insofar as streets in platted subdivisions are concerned.").

Thus, in 1958, when the Siddoways began developing their property, two seemingly conflicting statutes[4] were on the books, one

---

**3.** Section 27–1–7 stated, in relevant part, that a "transfer of land bounded by a highway passes the title of the person whose estate is transferred to the middle of the highway." Utah Code Ann. § 27–1–7 (1953) (repealed 1963).

**4.** The trial court concluded that § 27–1–7 was not applicable because the legislature repealed it before Hydroswift recorded its deeds in 1963, even though the lots had been purchased in 1958. This conclusion is wrong for two reasons. First, the fact that Hydroswift recorded the deeds almost five years after it purchased the lots does not control whether the statute applies. The act of recording merely protects the property owner against subsequent good faith purchasers of the same property who purchased without notice. Failure to record, however, does not affect the

validity of a legitimate conveyance of real property. *See Gregerson v. Jensen*, 669 P.2d 396, 398 (Utah 1983); *Bekins Bar V Ranch v. Beryl Baptist Church*, 642 P.2d 371, 373 (Utah 1982). Thus, the date the lots were purchased, not the date the deeds were recorded, is controlling. Therefore, § 27–1–7 applies in this case because Hydroswift purchased the lots five years before § 27–1–7 was repealed.

Second, although § 27–1–7 was repealed, a similar provision that retained the common law principle regarding ownership-to-the-middle-of-the-highway was enacted at the same time. *See* Utah Code Ann. § 27–12–101 (Supp.1993) (enacted 1963). Thus, even if the date of recording were controlling, the common law principle of an abutting landowner owning to the center of

representing a codification of the common law and one representing a statutory modification of the common law. First, section 27–1–7 [5] stated:

> By taking or accepting land for a highway the public acquires only the right of way and incidents necessary to enjoying and maintaining it. *A transfer of land bounded by a highway passes the title of the person whose estate is transferred to the middle of the highway.*

Utah Code Ann. § 27–1–7 (1953) (emphasis added) (repealed 1963). As noted by several early Utah cases, section 27–1–7 codified the common law rule. *Brown v. Oregon Short Line R. Co.,* 36 Utah 257, 102 P. 740, 742 (1909); *Hummel,* 265 P.2d at 411.

Second, Chapter 5 of Title 57 of the Utah Code, dealing with Plats and Subdivisions, stated:

> Such maps and plats, when made, acknowledged, filed and recorded, shall operate as a dedication of all such streets, alleys and other public places, *and shall vest the fee* of such parcels of land as are therein expressed, named or intended for public uses *in such county, city or town* for the public for the uses therein named or intended.

Utah Code Ann. § 57–5–4 (1990) (emphasis added) (repealed 1991) (replaced by *id.* § 10–9–807 (1992) (effective July 1, 1992)).

To resolve the apparent conflict between these two statutory provisions, we turn to a 1982 decision by the Utah Supreme Court:

> We held in *Oregon Short Line R.R. Co. v. Murray City,* 2 Utah 2d 427, 277 P.2d 798 (1954) there was no conflict between [sections 27–1–7 and 57–5–4] since the one statute deals with a dedication made by an owner who has prepared and recorded a

map or plat, and the other statute codifies the common law as regards other streets. *In the case of recording a formal map or plat our statutes give the public a fee interest,* but in the case of a common law dedication the public acquires merely a right-of-way.

*Mason v. State,* 656 P.2d 465, 471 (Utah 1982) (Howe, J., concurring) (emphasis added). Notably, the *Mason* court, in a departure from the common law, interpreted section 27–1–7 as not prohibiting the state from acquiring a fee simple title to a strip of land used for a highway. *Id.* at 467.

Thus, *Mason* instructs us in this case that section 57–5–4 controls because the Siddoways "made, acknowledged, filed and recorded" a map of their subdivision with the Rich County Commission. Therefore, pursuant to that section, Rich County obtained a fee interest in the strip of land dedicated for the county road.

■ The question remaining is what happened to the County's fee title when it vacated part of the old county road. The Utah Supreme Court has provided guidance in answering that question by stating that even though the "[l]egislature did not regard the dedication to the public of a street in a platted subdivision as the surrender of an easement with retention of the fee to the corpus in the abutting owner," *White v. Salt Lake City,* 121 Utah 134, 239 P.2d 210, 213 (1952), "[i]f the street should cease to serve any public interest, it may be abandoned and, in that case, the right to the use and control of the roadway would revert to the abutting owner pursuant to [section 27–1–7] and common law principles." *Id.* This language in *White* is consistent with Utah Code Ann. § 27–12–102.5 (Supp.1993) which states:

> by gift, agreement, exchange, purchase, condemnation, or otherwise for highway rights-of-way or other highway purposes may be in fee simple or any lesser estate or interest.
> (2) *A transfer of land bounded by a highway on a right-of-way for which the public has only an easement passes the title of the person whose estate is transferred to the middle of the highway.*

*Id.* (emphasis added).

---

the highway was codified and in force at all times during this case, either as § 27–1–7 or § 27–12–101.

**5.** This code provision was earlier found at Utah Code Ann. § 36–1–7 until its successor, § 27–1–7, was enacted. Additionally, § 27–1–7 was replaced by Utah Code Ann. § 27–12–101 (Supp. 1993) (enacted 1963), which continued codification of the same common law:

> (1) Title to real property acquired by the department or the counties, cities, and towns

The action of the county legislative body vacating or narrowing a county road which has been dedicated to public use by the proprietor, *shall operate* to the extent to which it is vacated or narrowed ... *as a revocation of the acceptance thereof, and the relinquishment of the county's fees therein* by the county legislative body.

*Id.* (emphasis added).

Thus, *White* and section 27–12–102.5 compel the conclusion that Rich County originally acquired a defeasible fee simple title,[6] rather than an absolute fee, from the Siddoways in 1958.[7] Thereafter, pursuant to *White* and section 27–12–102.5, the County lost that fee in 1969 when it vacated part of the roadway by moving it twenty-two feet to the west. Consequently, the fee simple title to the vacated strip of land reverted to Mrs. Ludlow. *Mason,* 656 P.2d at 471 (upon abandonment one-half of highway belongs to grantee or then present owner and not to original dedicator); *Siegenthaler v. North Tillamook County Sanitary Auth.,* 26 Or. App. 611, 553 P.2d 1067, 1069 (1976) (same). From that point on, Mrs. Ludlow held the fee simple absolute title and enjoyed the exclusive right to use and control the twenty-two foot strip of land.

## CONCLUSION

The trial court erred by concluding as a matter of law that Falula Farms owned the disputed strip of land. The County obtained only a defeasible fee in the land used for a county road. Once the County vacated part or all of the roadway, it lost its fee and the

abutting property owner, Mrs. Ludlow, succeeded to the fee simple title of that land. Therefore, we reverse and remand for entry of judgment quieting title in the disputed strip of land in Mrs. Ludlow.

ORME and RUSSON, JJ., concur.

---

6. Black's Law Dictionary defines a defeasible fee as "[a]n estate in fee that is liable to be defeated by some future contingency." *Black's Law Dictionary* 418 (6th ed. 1990). In addition to the statutory and case law that compel us to find a defeasible fee, the language in the recorded plat regarding *dedication of the road to the public for "perpetual use"* as a county road is consistent with our holding. That language arguably created a condition subsequent, the occurrence of which would divest the County of its fee title, by stating: "I [Alden Siddoway] hereby ... relinquish all rights to the new location of Public Right of Ways and hereby grant and convey them for perpetual public use." Thus, the County's fee title to the county road was valid so long as the strip of land was used by the public as a county road. The action by the County to vacate part of that road violated the condition subsequent and

worked to divest the County of its fee title to the vacated strip of land.

7. We note that other western states have also adopted this position. *See, e.g., Sutphin v. Mourning,* 642 P.2d 34, 36 (Colo.App.1981) (statutory provision gave abutting landowners fee title when any roadway designated on plat was vacated); *Bailey v. Ravalli County,* 201 Mont. 138, 653 P.2d 139, 143 (1982) (abandonment of public roadway by county commissioners meant that fee in street reverted to abutting landowners); *Town of Moorcroft v. Lang,* 761 P.2d 96, 98–99 & n. 2 (Wyo.1988) (dedication of public highway by filing of map gave town a fee simple determinable but upon vacation of any platted street or alleyway town lost all right to property).