Boyd NELSON, Lorraine Nelson, Steven Whitlock, and Sheila Whitlock, Plaintiffs and Appellants,

v.

PROVO CITY, a municipal corporation, Defendant and Appellee.

No. 930227–CA.

Court of Appeals of Utah.

March 23, 1994.

James G. Clark (argued), Provo, for appellants.

Gary Gregerson, Provo City Atty., and David Dixon, Asst. City Atty. (argued), Provo, for appellee.

Before BENCH, BILLINGS and DAVIS, JJ.

## OPINION

DAVIS, Judge:

Appellants (Landowners) appeal a final judgment concluding that appellee Provo City (City) holds legal and equitable title (fee simple) to the portion of 900 South between 100 East and University Avenue (Roadway) abutting Landowners' property. We reverse and remand.

Pursuant to the Federal Townsite Act of 1869, the federal government deeded the Roadway along with the abutting lands in trust to the local municipal authority, Provo Mayor Abraham O. Smoot, as trustee (the Townsite Conveyance). The Roadway existed as a public thoroughfare prior to this conveyance. The parties do not dispute that Landowners' predecessors in interest did not occupy the Roadway or the abutting property at the time of the Townsite Conveyance. Nor do they dispute that the metes and bounds of each subsequent conveyance ran to

**36**

the Roadway but did not specifically exclude it.

In 1871, Smoot deeded land north of the Roadway to James Dunn, who in 1876 deeded the parcel to Peter Stubbs. In 1982, a portion of the Stubbs parcel was deeded to appellants Stephen Whitlock and Sheila Whitlock. In 1985, Stephen Whitlock alone received another portion of the Stubbs parcel. Finally, in 1991, appellants Boyd Nelson and Lorraine Nelson received a deed for another portion of the Stubbs parcel.

In 1875, Smoot deeded land south of the Roadway to John P.R. Johnson, as trustee of the First Ward Pasture Company. In 1927, First Ward Pasture Company deeded its parcel to City. 900 South continued to be used as a public roadway.

In its regularly scheduled meeting of August 22, 1989, the Provo Municipal Council passed ordinance number 0-89-055, which purported to vacate and set aside the Roadway. After passing the ordinance, City published notice one time in the Provo Daily Herald on August 31, 1989. City mailed no notice of the vacation to the abutting landowners either before or after the fact. City then rerouted a portion of 900 South onto the property it owned to the south of the original route and sold the vacated portion of the original route to a commercial developer. The vacation of the Roadway landlocked one lot and deprived two other lots of access to 900 South.

Landowners sued City claiming a reversionary interest in the Roadway from their property lines to the middle of the Roadway. They sought compensation and, in the alternative, the setting aside of the vacation. City counterclaimed for quiet title to the Roadway.

On July 6, 1992, the trial court quieted title in City as against Landowners, concluding that City held fee simple title since the time of the Townsite Conveyance. Landowners moved for specific findings regarding City's compliance with the Townsite Act and with the State Township Act. The trial court denied the motion. Landowners appeal.

## CITY'S INTEREST IN ROADWAY

Landowners claim the court erred in concluding the Townsite Conveyance conveyed a fee simple interest to City because (1) the patent, when read in context of the Townsite Act, conveyed the Roadway to City in trust only, and (2) City failed to reserve the Roadway for public use pursuant to Utah Code Ann. § 57-7-8 or -17 (1990).

### *United States Patent*

■ In 1867, the United States Congress passed the Townsite Act, also known as "An Act of Congress for the Relief of the Inhabitants of the Cities and Towns upon Public Lands." Federal Townsite Act, ch. 177, 14 Stat. 541 (1867), codified as 43 U.S.C. § 718, repealed by P.L. 94-579, Title VII, § 703(a), 90 Stat. 2789 (1973). This act enabled town corporate authorities, as trustees, to acquire federally-owned property for their towns. The property was acquired

> in trust for the several use and benefit and use of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such rules and regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated.

*Id.*

The Townsite Act limited townsite lands to those "actually occupied by the town and the title to which is in the United States." *Id.* The Townsite Act provided that the local legislative authority could make regulations for the disposition of the townsite lands. *Id.* However, "any act of said trustees not made in conformity to the rules and regulations herein alluded to shall be void." *Id.* *See Hall v. North Ogden City*, 109 Utah 325, 175 P.2d 703, 705 (1946).

Conveyances pursuant to the Townsite Act transferred title to town authorities in trust for the collective occupants. Conversely, town authorities could not hold the land as purchasers.[1]

The Utah Supreme Court interpreted the Townsite Act to mean that conveyances

1. The following exchange between senators illustrates the intent of the Townsite Act that town

thereunder served to transfer equitable ownership of a parcel of land to an occupant only if the parcel was occupied at the time of transfer. *Hall,* 175 P.2d at 705. *Hall* does not address the issue before us: whether a municipality has fee simple to a dedicated roadway where the abutting land was unoccupied at the time the town acquired it.[2] Still, the language of the Townsite Act is clear that conveyances thereunder served to transfer land in trust to the municipality as trustee and not as absolute owner.

### Disposing Legislation

Landowners claim that City could not acquire title to 900 South under the patent unless Smoot reserved the street for public use by obtaining a deed. We agree.

The Townsite Act provided that the local legislative authority could make regulations for the disposition of the townsite lands and "any act of said trustees not made in conformity to the rules and regulations herein alluded to shall be void." 43 U.S.C. § 718. Utah's disposing legislation is found in Utah Code Ann. § 57–7–1 to –19 (1990).

Section 57–7–17 of the current code, and all predecessor statutes, provides as follows:

> Lots or parcels of land necessary for streets . . . may be reserved by the city commissioners, the mayor, the president of the board of trustees or the district judge, as the case may be; and he [or she] may

execute and deliver to the proper party a deed for any property set aside for such purposes.

Section 57–7–8 provides:

> If a city commissioner or the mayor of any city or the president of the board of trustees of any town shall be a claimant of lands in such city or town, the recorder or the clerk thereof, as the case may be, shall, upon the certificate of the district court made as in the case of other claimants, execute a deed of conveyance to such claimant for the lands finally adjudged to him [or her] by the court.

In short, the Townsite Act, along with the state's disposing legislation, provide that a townsite conveyance transferred land to a municipality in trust. In order for the municipality to own the land for itself, it, like any other claimant, would have to obtain a deed.

Here, the parties agree that City never explicitly reserved the Roadway or obtained a deed to the Roadway pursuant to section 57–7–8 or –17. Thus, City remains holder of the Roadway in trust. City purported to vacate the Roadway as absolute owner, without regard to its responsibilities as trustee or the provisions of Title 57. Accordingly, we remand this matter to the trial court to consider City's role as trustee of the Roadway, with its attendant fiduciary duties to the beneficiaries, in this case, the collective occupants of the town. *See* 43 U.S.C. § 718.

---

authorities could not purchase the land, but must hold it in trust for the collective occupants:

> Mr. Howard: Does the Senator from California mean to be understood that this bill provides that the corporate authorities of the town may become the purchasers? Is that the scheme here?
>
> Mr. Conness: No, sir.
>
> Mr. Howard: I so understood him.
>
> Mr. Conness: They simply enter the land as agents in trust for the occupants, those in possession.
>
> Mr. Howard: Do they get a title?
>
> Mr. Conness: A title for the occupants from the United States.
>
> Mr. Howard: Then they become the owners in trust.
>
> Mr. Conness: In trust. That is it exactly.

Congressional Globe, 39th Cong., 2nd Sess. 1109 (1867).

**2.** City cites *Loeber v. Butte General Electric,* 16 Mont. 1, 39 P. 912 (1895) for the proposition that the municipality holds fee simple title as absolute

owner to a street derived from a townsite conveyance. In *Loeber,* the disputed alley had been included in the original townsite survey and the abutting land had been occupied at the time of the townsite transfer. The issue of whether the municipality held the alley in fee simple or as a determinable fee was not before the court. The court held that because the alley in question had been dedicated to public use before the conveyance of the lot, the abutting landowner "was not the owner in fee of the alley" and thus the abutting landowner could not complain of the installation of electric poles in the alley. *Id.* 39 P. at 913. This holding is not helpful to resolution of this case because it does not resolve whether the municipality held a determinable fee or an absolute fee in the alley. The municipality in *Loeber* needed only to have held a determinable fee or even an easement to permit installation of the electric poles.

## DETERMINABLE FEE

■ Landowners claim the trial court erred in failing to conclude that upon vacation of the Roadway, the fee to the center line of the Roadway would revert to them as abutting property owners.

■ Utah case law relies on common law to support the theory that where a municipality has but a determinable fee [3] and does not own the underlying fee simple, the vacating of the roadway results in the fee reverting to the abutting landowners. *Sears,* 572 P.2d at 1363; *White v. Salt Lake City,* 121 Utah 134, 239 P.2d 210, 213 (1952); *Falula Farms,* 866 P.2d at 571. *See also* Utah Code Ann. § 10-8-8.5 (Supp.1993) (vacating of public roadway dedicated to public use by proprietor terminates city's determinable fee therein). Conversely, where a municipality owns the underlying fee to a roadway, proper vacation of such would not change the municipality's right to the underlying fee. *Sears,* 572 P.2d at 1363.

While City may hold the Roadway in fee simple, that interest is held in trust. Thus, even if City as trustee had (or could have) properly vacated the Roadway, City's interest would still be held in trust and not in absolute ownership. This brings us to whether or not City properly vacated the Roadway.

## NOTICE TO VACATE

■ Landowners claim City did not properly vacate the Roadway because it did not provide proper statutory notice to abutting landowners and City's other occupants.

A municipality may not vacate a street unless it has provided proper notice pursuant to Utah Code Ann. § 10-8-8.4 (1992). Notice is given "by publishing in a newspaper published or of general circulation in such city once a week for four consecutive weeks preceding action on such petition or intention

... and by mailing such notice to all owners of record of land abutting the street or alley proposed to be vacated...." *Id. See also Ercanbrack v. Judd,* 524 P.2d 595, 597 (Utah 1974) (purported vacation of roadway nullity where no notice given to abutting landowners or general public); *Boskovich v. Midvale City Corp.,* 121 Utah 445, 243 P.2d 435, 437 (1952) (improper vacation of street and alley denied abutting landowners due process); *Tooele City v. Elkington,* 100 Utah 485, 116 P.2d 406, 407, 410 (Utah 1941) (mayor could not quitclaim alley by resolution to abutting land owner in contravention of vacation statute even where land had been deeded to city by federal government).

Here, City did not notify abutting landowners, nor did it notify its citizens generally pursuant to statute. In fact, the single published notice ran after the purported vacation. Thus, City's notice was not only insufficient, it was untimely. As a result, any purported vacation of the Roadway is a nullity. *See Boskovich,* 243 P.2d at 437. We therefore reverse the court's conclusion that City properly vacated the Roadway and remand for further proceedings consistent with this opinion.

## CONCLUSION

We (1) hold that the Townsite Act conveyed the Roadway to City in trust only; (2) hold that City never explicitly reserved the Roadway or obtained a deed to the Roadway pursuant to statute; (3) remand for consideration of City's role as trustee of the Roadway, with its attendant fiduciary duties to the beneficiaries; and (4) reverse the court's determination that City properly vacated the Roadway.

BENCH and BILLINGS, JJ., concur.

---

**3.** A fee simple determinable expires automatically on the occurrence of a stated event. *See* Black's Law Dictionary 615–16 (6th ed. 1990). Thus, where a municipality has a determinable fee in a roadway, common law provides that the limited fee ends when the roadway is vacated. *See Falula Farms v. Ludlow,* 866 P.2d 569, 571 (Utah App.1993). Unlike the situation here a municipality typically obtains a determinable fee in roadways when the same are accepted thereby pursuant to the final approval of a subdivision plat. That was the case in *Sears v. Ogden,* 572 P.2d 1359, 1363 (Utah 1977). Here, we determine that whether City's interest was that of a determinable fee or a fee simple, the interest was held only in trust.