2000 Utah Ct. App. 204

**Boyd NELSON, Lorraine Nelson, Stephen Whitlock, and Sheila Whitlock, Plaintiffs and Appellants,**

v.

**PROVO CITY, a municipal corporation, Defendant and Appellee.**

No. 990578–CA.

Court of Appeals of Utah.

June 29, 2000.

David N. Mortensen, Ivie & Young, Provo, for Appellants.

David C. Dixon, Provo City Attorney's Office, Provo, for Appellee.

Before JACKSON, Associate P.J., BENCH, and ORME, JJ.

## OPINION

JACKSON, Associate Presiding Judge:

¶ 1 This is our second round with this case. About six years ago, we issued *Nelson v. Provo City*, 872 P.2d 35 (Utah Ct.App.1994), and remanded to the trial court for further proceedings. Boyd and Lorraine Nelson and Steven and Sheila Whitlock (Landowners) now challenge the trial court's decision on remand. We affirm.

## BACKGROUND

¶ 2 The facts are undisputed. At issue is title to land in Provo that formerly served as 900 South Street between 100 East Street and University Avenue (Old 900 South). Old 900 South abuts the Landowners' property.

¶ 3 Under the Federal Townsite Act of 1867, ch. 177, 14 Stat. 541 (1867), codified as 43 U.S.C. § 718, repealed by P.L. 94–579, Title VII, § 703(a), 90 Stat. 2789 (1976),[1] the United States government deeded legal title to the property within the Provo townsite, including Old 900 South and the abutting lands, to Provo Mayor Abraham O. Smoot, as trustee. Even before this conveyance, Old 900 South served as a public road. However, the Landowners' predecessors in interest occupied neither Old 900 South nor the abutting land when the conveyance occurred.

In 1871, Smoot deeded land north of [Old 900 South] to James Dunn, who in 1876 deeded the parcel to Peter Stubbs. In 1982, a portion of the Stubbs parcel was deeded to appellants Stephen Whitlock and Sheila Whitlock. In 1985, Stephen Whitlock alone received another portion of the Stubbs parcel. Finally, in 1991, appellants Boyd Nelson and Lorraine Nelson received a deed for another portion of the Stubbs parcel.

In 1875, Smoot deeded land south of [Old 900 South] to John P.R. Johnson, as trustee of the First Ward Pasture Company. In 1927, First Ward Pasture Company deeded its parcel to [Provo]. 900 South continued to be used as a public roadway.

In its regularly scheduled meeting of August 22, 1989, the Provo Municipal Council passed ordinance number 0–89–055, which purported to vacate and set aside the [r]oadway.... [Provo] then rerouted a portion of 900 South onto the property it owned to the south of the original route and sold the vacated portion of the original route to a commercial developer....

Landowners sued [Provo] claiming a reversionary interest in [Old 900 South] from their property lines to the middle of the [former r]oadway. They sought compensation and, in the alternative, the setting aside of the vacation. City counterclaimed for quiet title to [Old 900 South].

On July 6, 1992, the trial court quieted title in [Provo] as against Landowners, concluding that [Provo] held fee simple title since the time of the Townsite Conveyance. Landowners moved for specific findings regarding [Provo's] compliance

---

1. For further discussion of the Federal Townsite Act and Utah's legislation facilitating it, please refer to our prior opinion in this case, *Nelson v. Provo City*, 872 P.2d 35, 36–37 (Utah Ct.App. 1994).

with the Townsite Act and with the State Township Act. The trial court denied the motion. Landowners appeal[ed].

*Nelson v. Provo City*, 872 P.2d 35, 36 (Utah Ct.App.1994).

¶ 4 On appeal, we decided that defective notice rendered a nullity Provo's attempted vacation of Old 900 South. *See id.* at 38. We further determined that Provo could only have had fee simple title to the land if it had "explicitly reserved the Roadway or obtained a deed to the Roadway pursuant to section 57–7–8 or –17"—which it had not. *Id.* at 37; *see also* Utah Code Ann. § 57–7–8 (1994) (repealed 1999) ("If a city commissioner or the mayor of any city or the president of the board of trustees of any town shall be a claimant of lands in such city or town, the recorder or the clerk thereof, as the case may be, shall, upon the certificate of the district court made as in the case of other claimants, execute a deed of conveyance to such claimant for the lands finally adjudged to him by the court."); *id.* § 57–7–17 (repealed 1999) ("Lots or parcels of land necessary for streets ... may be reserved by the city commissioners, the mayor, the president of the board of trustees or the district judge, as the case may be; and he may execute and deliver to the proper party a deed for any property set aside for such purposes."). We therefore held that "[Provo] remains holder of the Roadway in trust," *Nelson,* 872 P.2d at 37, and remanded to the trial court for the limited purpose of considering Provo's "role as trustee of the Roadway, with its attendant fiduciary duties to the beneficiaries." *Id.* at 38.

¶ 5 The trial court held a trial on February 6, 1995 in which it heard testimony and took documentary evidence. As they have argued throughout this litigation, Landowners asserted again on remand "that a conveyance of land abutting a road impliedly conveys the land to the middle of the road (in spite of a metes and bounds description which does not include any portion of the Roadway)." *Nelson v. Provo City*, No. 910400527, slip op. at 4 (Utah Dist.Ct. Feb. 17, 1995). They therefore contended that they own the land area of Old 900 South to the center of the former roadway abutting their parcels and that, upon Provo's vacation of Old 900 South, use and possession of that strip of land reverted to them.

¶ 6 The trial court responded,

In the Court's determination, the fact that the City held *title* to the land on which the Roadway was located (albeit in trust) leads to the conclusion that the Roadway was not a road made pursuant to the grant of an easement which would carry with it a reversionary interest. Even supposing that an easement was created when the City received the land in trust which already contained the Roadway, the holder of the easement would be Provo City and the collective occupants of the City of Provo—the same parties who held title to the underlying fee—under these circumstances the easement would merge with the fee. The Court cannot conceive of (and Plaintiffs have not presented preponderating evidence of) how the conveyance of property abutting the Roadway deprives the owners of the underlying fee to the Roadway of their title.

*Id.* at 4–5.[2]

¶ 7 The trial court went on to hold that, although Provo did not properly vacate Old 900 South, vacation proceedings were unnecessary in this case to effect a vacation or abandonment of that street. Finally, the trial court determined

that [Provo] acted within its fiduciary powers and responsibility when it determined that it was in the best interest of the

---

2. Treatment of this issue on remand would seem to be beyond the scope of our remand order. *See Nelson,* 872 P.2d at 37, 38. However, in a way our prior opinion left this issue open for further discussion. We *did* conclude that Provo never held the land in fee simple, but held only legal title in trust for Provo's collective occupants as beneficiaries, *see id.* at 37, and we deemed it unnecessary to decide whether Provo's interest in Old 900 South was a determinable fee, *see id.* n. 3 ("[W]e determine that whether City's interest was that of a determinable fee or a fee simple, the interest was held only in trust."). Still, past focus by the parties and courts on the important question of Provo's trusteeship leaves unturned a key to resolving this case: Whether the nature of Provo's interest in the road before vacation was a determinable fee, leaving a reversionary interest in Landowners?

collective occupants of the city of Provo to realign the Roadway to create a functional intersection, and when it sold [Old 900 South] which it held in trust to a private party and deposited the proceeds in the general treasury for the benefit of the collective occupants of the city of Provo. *Id.* at 5–6 (footnote omitted).

¶ 8 In this second appeal, Landowners do not attack the trial court's conclusion that formal vacation proceedings were unnecessary here; we thus assume for purposes of this appeal that Old 900 South has been legally abandoned or de facto vacated. Nor do Landowners oppose the trial court's determination that Provo properly executed its responsibilities as trustee when it realigned 900 South and sold the land to a private concern, putting the proceeds in its general treasury. The dispositive issue raised by Landowners is whether Provo's interest in Old 900 South is merely a determinable fee, thus causing that property's use and possession to revert to Landowners when Old 900 South was vacated or abandoned. *See Nelson,* 872 P.2d at 36.

## ANALYSIS

■ ¶ 9 Landowners' challenge "involves an ultimate conclusion of law as to who owns the disputed piece of property. In reviewing the trial court's conclusions of law, we accord them no particular deference but review them for correctness." *Falula Farms, Inc. v. Ludlow,* 866 P.2d 569, 571 (Utah Ct.App. 1993).

### I. Landowners' Reversionary Interest

¶ 10 Landowners support their argument that the land to the center of Old 900 South should revert to them with citation to statutory and case law that mirrors the common law regarding the ownership of the land underlying public highways. For instance, Utah Code Ann. § 72–5–103(3) (1999) states, "A transfer of land bounded by a highway on a right-of way for which the public has only an easement passes the title of the person whose estate is transferred to the middle of the highway." The earlier version of this statute in effect closer to the time of the conveyance from the Provo trustee to Land-

owners' predecessor in interest stated, "A transfer of land bounded by a highway, passes the title of the person whose estate is transferred, to the center of the highway." Compiled Laws of Utah § 2071 (1888); *see, e.g., Falula Farms,* 866 P.2d at 571 ("[A]t common law the owner of land which abutted a highway owned up to the middle of the highway.").

¶ 11 Under this law, Landowners assert that, when the Provo trustee in 1871 originally deeded to James Dunn (Landowners' predecessor in interest) the land abutting Old 900 South to the north, the trustee also implicitly deeded Dunn the land to the center of Old 900 South—even though the metes and bounds description did not include any part of the street. Then, through the chain of deeds to other predecessors in interest and eventually to Landowners—also with metes and bounds descriptions not including any part of Old 900 South—title to the land to the center of Old 900 South passed to Landowners.

■ ¶ 12 As we noted in our previous opinion in this case, this center-of-the-highway rule has been applied in Utah when a local governmental entity has "but a determinable fee and does not own the underlying fee simple." *Nelson v. Provo City,* 872 P.2d 35, 38 (Utah Ct.App.1994) (footnote omitted). In those cases, "the vacating of the roadway results in the fee reverting to the abutting landowners." *Id.* We explained that

> [a] fee simple determinable expires automatically on the occurrence of a stated event. Thus, where a municipality has a determinable fee in a roadway, common law provides that the limited fee ends when the roadway is vacated. *Unlike the situation here* a municipality typically obtains a determinable fee in roadways when the same are accepted thereby pursuant to the final approval of a subdivision plat. That was the case in *Sears v. Ogden,* 572 P.2d 1359, 1363 (Utah 1977).

*Id.* n. 3 (citations omitted; emphasis added).

¶ 13 Aside from *Sears,* in *Falula Farms,* defendant's predecessors in interest planned to develop 160 acres. *See Falula Farms,* 866 P.2d at 570. They filed a plat of the pro-

posed subdivision, dedicating several strips of the property for roads—including one for a county road—then sold lots abutting that road. *See id.* Later, when the county vacated the road, this court held that the dedication of the road in a subdivision plat by defendant's predecessors in interest had granted the county "a defeasible fee simple title, rather than an absolute fee.... Consequently, the fee simple title to the vacated strip of land reverted to [defendant]." *Id.* at 573 (footnote omitted); *see also Sears,* 572 P.2d at 1363 (citing *White v. Salt Lake City,* 121 Utah 134, 239 P.2d 210 (1952), for the proposition that "the interest a municipal body acquires in the streets in a platted subdivision is a determinable fee" and "[u]pon vacation by the governing authorities, the fee reverts to the abutting property owner").

¶ 14 Similarly, in *Fenton v. Cedar Lumber & Hardware Co.,* 17 Utah 2d 99, 404 P.2d 966 (1965), a grantor designated a public street to bisect her tract of land, selling off the land on each side of the planned street to separate parties—predecessors in interest of the plaintiff and defendant. *See id.* at 967. She then executed a deed to the city for the area containing the planned street, "with the provision that it be 'used for a street and no other purpose.'" *Id.* The city recorded the deed. *See id.* The grantor later conveyed to the defendant by quitclaim deed any interest she may own in the "street" property should the city vacate the street. *See id.* at 967–68. When the city finally did vacate the street (which, incidentally, had never been opened as a public street), the defendant tried to claim the entire width of the street for itself, under the grantor's quitclaim deed. *See id.* at 968. However, the supreme court held that the original deed from the grantor to plaintiff's predecessor in interest "conveyed her fee interest to the center line of the 'street,' subject to an easement for a public road." *Id.* The court thus quieted title to the center of the "street" in the plaintiff. *See id.* In doing so, the court noted that at common law "a *private conveyance* of land bounded by or abutting on a highway, the fee to which belongs to the abutting owners, is presumed to convey the fee to the highway to the center line thereof." *Id.* (emphasis add-

ed) (citing *Hummel v. Young,* 1 Utah 2d 237, 239, 265 P.2d 410, 411 (1953)).

¶ 15 Finally, *Sowadzki v. Salt Lake County,* 36 Utah 127, 104 P. 111 (1909), involved a grantor who divided some acreage into lots and streets, then filed a plat with the city. *See id.* at 112. In that case, the supreme court stated,

It is quite true that the original owner may not, after selling lots abutting on a dedicated street or highway, reclaim that portion of the land included within the highway in case it is vacated or abandoned. In parting with his title to the lots the fee passes to the purchaser to the center of the highway, and, if the highway is vacated or abandoned the land belongs to the abutting lot or landowner, and not to the original owner, unless an express reservation to that effect was made in the dedication or conveyance.

*Id.* at 116–17.

¶ 16 In each of the above cases, a private grantor split a larger tract of land into smaller lots and public streets. The public streets were all dedicated to a local governmental entity when the grantor filed a subdivision plat (except in *Fenton,* in which the street designation was done by deed). *See Fenton,* 404 P.2d at 967. As we observed in our previous opinion in this case, the above cases are "unlike the situation here." *Nelson,* 872 P.2d at 38 n. 3. Here, we have a street that existed before the abutting land was occupied or divided into lots; it was not platted concurrent with the division of a larger area into lots. The street was dedicated to public use before the abutting lots were occupied. Further, we have a *public entity* as the grantor. This case does not feature the "*private* conveyance of land bounded by or abutting on a highway," which presumably "convey[s] the fee to the highway to the center line thereof." *Fenton,* 404 P.2d at 968 (emphasis added). In all these ways, the Utah cases awarding the land to the center of a vacated or abandoned highway to abutting landowners are distinguishable from this case. Accordingly, Landowners' assertion that Provo had only a determinable fee in the road that

left them a reversionary interest in Old 900 South upon vacation of that road fails.

¶ 17 We thus conclude the trial court's ultimate decision denying Landowners any reversionary interest in Old 900 South was correct, although our analysis is different. *See Gibbs M. Smith, Inc. v. United States Fidelity & Guar. Co.*, 949 P.2d 337, 342 n. 3 (Utah 1997) (" 'We may affirm a trial court's decision on any proper ground(s), despite the trial court's having assigned another reason for its ruling.' ") (quoting *Buehner Block Co. v. UWC Assocs.*, 752 P.2d 892, 895 (Utah 1988) (footnote omitted)).

## II.  Provo's Interest

■ ¶ 18 Because we have determined that the Provo trustee's deed to Landowners' predecessor in interest conveyed no interest in Old 900 South, and since we assume in this opinion that Old 900 South is legally no longer a road, we must conclude that Provo's interest—after the road was legally abandoned or de facto vacated, but before selling to a third party—remained what it was in 1871 (before the original conveyance to Dunn): that of holder of legal title for the benefit of the equitable title holders, the occupants of Provo. *See Nelson*, 872 P.2d at 37–38 (holding that Provo never reserved Old 900 South by deed as it must have to obtain fee simple absolute and that "city remains holder of [Old 900 South] in trust" under the Federal Townsite Act); *see also* 39 Am Jur.2d *Highways, Streets, and Bridges* § 183

(1999) ("[T]he ownership of the fee depends, of course, on the ownership of the land at the time the highway was established and on subsequent conveyances thereof."). As trustee, Provo has since conveyed Old 900 South to a private entity and used the proceeds for the benefit of all Provo's occupants. Landowners have not challenged the propriety of those fiduciary actions.

## CONCLUSION

¶ 19 We conclude Provo's interest in 900 South before its vacation was not simply a determinable fee leaving Landowners a reversionary interest to the center of the street.  Upon vacation of Old 900 South, Provo thus remained holder of legal title to Old 900 South in trust for all Provo's occupants.  Provo's subsequent actions as trustee are not further challenged on appeal.

¶ 20 Affirmed.[3]

¶ 21 I CONCUR: GREGORY K. ORME, Judge.

¶ 22 I CONCUR IN THE RESULT: RUSSELL W. BENCH, Judge.

---

3.  Based on our disposition, we need not address other issues raised by Landowners—i.e., the trial court's failure to apply the law of the case or whether fee simple absolute title in Provo would be void under the Townsite Act.  Also, we have reviewed and decline Provo's request at oral argument for reconsideration of our denial of its previous motion for summary disposition.  Final-ly, Provo listed the following issue in its brief, which was not raised by Landowners nor followed up on by Provo: "Was the district court's decision denying appellants' claim for damages due to a taking by the city supported by the legal principles governing the case?"  We thus do not consider it.